KASTL *v.* ARTHUR.

1. FRAUDULENT CONVEYANCES — CONSIDERATION — QUESTION FOR JURY.

Where, in replevin for cattle seized on execution against plaintiff's husband and father-in-law, plaintiff's testimony tended to show that the farm from which the cattle were taken, which was occupied by all of the parties, and worth about $3,000, was conveyed to her by the father, together with the stock thereon, in consideration of $300 loaned by her to him when she moved there, some 11 years previously, of her services during such period, and her agreement to support the father during life, the question of whether the transfer was fraudulent as to creditors was for the jury.

2. TITLE TO PERSONALTY—EVIDENCE—HUSBAND AND WIFE.

In replevin by a wife for property seized on execution against her husband, evidence that no personal tax was assessed against plaintiff, and that the husband had joined with her in a mortgage on the property, was admissible on the question of title.

Error to Wayne; Donovan, J. Submitted November 17, 1903. (Docket No. 128.) Decided December 22, 1903.

Replevin by Rozy Kastl against Jerry Arthur and William McBride. From a judgment for defendants, plaintiff brings error. Affirmed.

*Hamilton Baluss*, for appellant.

*Hiram L. Rice* (*John Galloway*, of counsel), for appellees.

MONTGOMERY, J. This is replevin for five cows, taken by the defendant Arthur, as constable, on an execution in favor of the defendant McBride. The cattle were taken from a farm occupied by John Kastl, his son, Paul Kastl, and plaintiff, the wife of the latter. The execution ran against the father and son. The plaintiff claimed on the trial to be the absolute owner of the cows. The defendants contended that the cows were in truth the property of John and Paul Kastl, and that any pretended transfer to the plaintiff was made with the purpose of defeating creditors. Upon this issue the jury found for the defendants, and plaintiff brings error.

The plaintiff contends in this court that a verdict should have been directed in her favor. By her testimony she moved onto this place 11 years ago. The title then stood in the name of John Kastl, and the farm consisted of 50 acres, subject to a mortgage of $300. Later this mortgage was taken up, an additional 40-acre piece was purchased, still in the name of John Kastl, and a mortgage of $1,100 was given back. The personal property on the farm also stood in the name of John, or John and Paul. She testified that when she went to the farm she had $300 in money, which she loaned to John Kastl, and that in 1900 he deeded the farm to her to pay for money advanced and for her services. It is significant that she does not testify to any understanding as to her compensation. Her hus-

band testifies that she was to receive $12 per month, and that he assented to it; that the consideration for the deed of the farm was the wages so earned, the money advanced, and an agreement to support the father, John Kastl, during life. He also testified that there were four head of cattle on the farm when the deed was made to the wife. Plaintiff testified that she got this stock with the farm. On the part of the defense it was shown that John and Paul were indebted to different parties, some on note for cattle which had never been paid for; that a chattel mortgage had been given by plaintiff and Paul Kastl on some of these cows; and that no account of personal property had been made to plaintiff. We think there was clearly enough in these circumstances to raise a question of fact. The fact appears undisputed that property worth in the neighborhood of $3,000 found its way into plaintiff's hands upon no consideration except about $300 and services in her own household while living with her husband, and that, when the conveyance was made, it was subject to a secret trust for the support of the grantor. If this transaction conclusively shows thrift, it does not as persuasively testify to honesty and good faith.

Complaint is made of the ruling admitting proof that no taxes were assessed against the plaintiff for personal property. If the property belonged to her, it was her duty to give it in for taxation, and, while failure to tax it in her name was by no means conclusive, it was a circumstance to be considered with others in the case. *Rayner* v. *Lee*, 20 Mich. 387; *Murray* v. *Hudson*, 65 Mich. 676 (32 N. W. 889); *Sauers* v. *Giddings*, 90 Mich. 50 (51 N. W. 265); *Whitaker* v. *Shooting Club*, 102 Mich. 460 (60 N. W. 983). So, also, the joining of plaintiff with her husband in a mortgage was evidence tending to show title in him.

Complaint is made of the charge of the court. The only doubtful portion of the charge is that relating to the transfer of the real estate. It is possible that the statement of the testimony by the circuit judge was slightly

inaccurate, but, in view of the fact that plaintiff's own testimony shows that there was a secret reservation in favor of the grantor, providing for his support during life, —an arrangement fraudulent *per se* as to creditors,—we do not see how any harm came to plaintiff from any slip in restating the testimony to the jury.

The judgment is affirmed.

MOORE, CARPENTER, and GRANT, JJ., concurred. HOOKER, C. J., took no part in the decision.